17-0185, People of the State of Illinois, Accolades, by Richard Leonard v. William Grant as accountants, by Jay Wigman. Good morning. May it please the Court, Counsel, I am Jay Wigman, Assistant Court Defender with the Office of the State Court Defender, Counsel for Defendant James Grant, who asserts that he was denied the due process of law when the trial court improperly relied upon the report of an employee of the State's Attorney's Office and found, without inquiring of the juror in question, that a juror had fallen asleep, even though the judge had observed otherwise, and secondly, that he was denied equal protection of the law through the disparate treatment of the lone juror who is African American, given that there was at the same time a juror who was not African American who was suspected of falling asleep as well. I would note that within the brief there were actually two arguments that were included, while we still rely upon the brief for the second argument. Because it is a relatively straightforward one, it deals with the improper use of an aggravating factor that is inherent in the sentence itself. The State seems to agree that it was improper to use that factor with questions only whether it was, in fact, second-pronged claim of error. Because it is a relatively straightforward question, I don't intend on addressing that director's argument. Of course, if the Court has any questions regarding that issue, I am happy to answer them. But my primary focus will be on the first issue raised within the brief, which is, again, concerning the due process and equal protection violations that were created in this being a rather unusual circumstance, where Judge noticed that during the opening statements of the trial, two jurors seemed to be struggling to stay awake during the opening statements. One was nodding more than the other, and it was considered that Rodney Byrd, one juror in particular, was more dramatically appearing to be falling asleep. The State, after the discussion that was rather brief with the trial court in between the opening statements and the first witness for the State, the State's attorney told the victim advocate to keep an eye on that particular juror. Nothing was said about the other juror that the Court had noticed had been falling asleep as well. According to the transcripts, the State simply told the advocate to keep an eye on Rodney Byrd. After the first witness was completed, then there was a discussion, and the State said to the trial court, I want you to know that I had our advocate keep an eye on Rodney Byrd, and it was noticed that he was falling asleep. And the judge was surprised by this. He said, I've been watching that juror, too, and I didn't notice any of that. And said repeatedly, I didn't notice any of that the second time around, and I was looking a lot, was one of the statements from the judge. But the judge deferred to the victim advocate, who apparently the judge had worked with, he said, hundreds of times in hundreds of cases, and he had 100% faith in the statement that was being attributed to the advocate. And I say attributed to the advocate. There was a brief discussion between the advocate and the court, and a description of what the advocate had seen this juror did in terms of falling asleep, or looking as if he was nodding off and then jolting away. And that happened a couple of times. It didn't even cover the span of five seconds. But the advocate is never named within the transcripts. We have an unidentified person, an employee of the state's attorney's office, suggesting to the court that it's a juror who is apparently beginning to fall asleep. And the court relies upon that as the sole basis for removing the juror. And that's the key component to our due process. I would note as well that the description of the lineup of the jurors indicates that the juror, Rodney Burge, sat directly behind another juror, Mona Campbell, who was the juror who apparently had difficulty falling asleep. But there were no observations of her made during this conflict with the court and the advocate in the discussion with counsel. Well, how do you know that? Because she's not mentioned at all. And how do I know that she's sitting in front of him? In other words, there are 12 people in that jury box. How do we know for the record that nobody was watching her? In other words, you wouldn't mention her if she didn't fall asleep, if you have no reason to. Well, the judge had mentioned the first time around that he had seen her fall asleep. And the judge mentioned that she was directly in front of him. And so what I'm saying is if you're observing Rodney Burge in the back row, of necessity you're looking across the front row to see him. So the inference is that if he were to be noticed, she would be noticed as well if she were false. And the judge said that she was doing so, but his description was that it wasn't severe, that she was not. Well, wouldn't the same be true for the victim advocate? If she were watching Burge, she wouldn't necessarily be watching the other juror. And you couldn't see Burge without seeing the other juror. And if that juror had fallen asleep, you would have mentioned that too. Right, but first, well, except that the judge had indicated that he observed her and it was discussed later that he had seen her as well, he was still worried about her. And he had noticed her, but he hadn't noticed Rodney Burge falling asleep. And I'm saying that the reverse is true, that if the victim advocate had noticed Rodney Burge falling asleep, there should have been commentary about the second juror as well. Well, the victim advocate was told to watch Rodney Burge. Correct. Not watch both of them, right? She was not directed, apparently, by the state's attorney's office to watch both of them. The, I think the best guidance for what should have happened in this case is provided by the case of Mitchell v. Eladi, an Illinois Supreme Court case from 1984, where, although Grace wasn't involved, there was a similar situation involving a juror that had appeared to fall asleep. It was brought to the court's attention after extensive testimony and a number of witnesses. And the court said, you're a little too late in bringing this to my attention, but what we need to do now is we need to talk to the juror. And the court spoke with the juror, asked questions about whether the juror had fallen asleep. The juror indicated that he had knocked it off a couple of times, but he hadn't missed any of the testimony. And he believed that he had heard everything that had been said. And this seems to suggest that the appropriate course for the judge in this case was to inquire of Burge whether or not Burge was having difficulty staying awake and whether Burge had missed that. But no inquiry was made of the juror. And the court said at one point, well, maybe, you know, we could ask, but what if he says, well, I did, but I won't do it again. And he didn't want to get into that conversation, so he determined not to inquire of the juror. But the first question that should have been asked and the first step that the court should have taken in this case is to inquire of the juror whether there were any difficulties or get some sort of evidence, because one of the statements that came from Solano was that simply relying upon the statement of the parties, in that case it was the defense counsel, who indicated that the defense counsel had noticed that a juror seemed to be having difficulty and said that others in the courtroom had seen it as well. We have the same concerns here, except it's on the other side, where the state's attorney makes this representation to the court where the victim advocate, who we don't have identified in the record, makes a statement as well as incumbent upon the court to inquire of the juror or to inquire of other jurors because there were indications that perhaps other jurors had noticed this as well. That step should have been taken to determine whether or not the juror was not capable of performing his duties in this case. Because that wasn't taken, we maintain that it was a due process violation. It's not properly investigated. As noted by the defense counsel at the time, it wasn't even clear whether or not the juror had fallen asleep. Instead, he was removed. And under the facts of this case, that leads to legal protection violations because of the fact that the juror who was removed was the lone African-American on the jury. At the same time, there was another juror who appeared to have difficulty as well and continued to have difficulty after the first juror was removed. But there was never a movement made by the state or by the court to remove that juror. And there was never the same expression of concern about the mere possibility of the juror missing any portion of the trial. In the instant case, the juror who was removed was removed after the first witness, but after a very brief opportunity and no inquiry as to whether there had been even any juror misconduct. And secondly, whether if there was a juror misconduct in the sense of falling asleep, whether that arose to a level that created an inability to perform the juror's job. We're dealing with a state employee for one side indicating to the court, and the court essentially deferring the judge's own observations. The judge said, I was looking a lot. This was obviously an issue that had concerned him. He'd been the one to bring it up the first time. And in doing so, the judge virtually abdicated his own findings and said, I didn't see it, but if the juror, if the advocate saw it, then I believe it. The lack of impartiality here is of concern in the fact that the judge basically deferred his own observations to those of the advocate who's troubled in this case. And for that reason alone, the court should reverse the findings of the trial court. There was no questioning of the juror, and there was a disparate treatment between an African-American juror and a juror who is not African-American who showed the same difficulties at the same time as the juror who was ultimately removed. Essentially, the court delegated its authority to the advocate. And while in general terms, this court would defer to the findings of the trial court, because the trial court deferred to the findings of the advocate, there was an abuse of discretion in that there was virtually no discretion employed by the trial court at all. We didn't take the steps that the law allows, and as the law seems to require, that there be a conversation with the juror and a proper investigation, rather than merely relying on the word of an interested party. For those reasons, then, if there are no further questions, I would simply ask that this court reverse the remand as requested in its brief and as apported to this argument. Thank you, Mr. Wigman. Mr. Leonard. May it please the Court, the first issue we have to address, is the arbitration here. The defendant never raised the due process argument for equal protection argument in the trial court. Ordinarily, first people versus enacted never put it in a supposed trial motion. You can't argue a deal for the first time. We had an argument in the trial court, and we argued that these two arguments were perpetrated. I feel, as far as I can tell, there was no reply brief trial in this case. The defendant never addressed this. The perpetrator argument, if the defendant never asked for a preliminary review, he cannot move this verdict. First people, first billiards, that's the Supreme Court case. So I would ask that this court first find that the arguments have been permitted on appeal. In the alternative, I will address the due process argument first. Even though the victim of this advocate was paid by the state, I would submit that she was an officer of the court as well. She is paid to be an aide to the court and to witness this who comes before me. There is no case law saying victim representatives are officers of the court. No, there's not. That's my submission besides that the trial court stated four times that there was 100% confidence in the victim's advocate. Now, even though the trial judge stated that he did not see Rodney Byrd calling this thing, his caveat to that was, well, he's watching the jurors, he's watching witnesses testify, he's watching the lawyers, so he might not have seen it. Here we have Glenna Campbell, she's the white female juror, sitting right in front of Jared Byrd, the African-American juror, so if she is watching... Remind me, were there seating assignments during the trial? There was not in the record, but the trial judge stated in a lengthy record, I put most of the statements of the trial judge in my brief on pages 5 through 8. About the position of the two? Excuse me? Regarding the position of the two. Yes, the trial court stated the position of the two. He stated that he was watching Jared Byrd and he brought this to the attorney's attention and made a record that his eyes were getting heavy and that it looked like they had fallen asleep. He also mentioned that Jared Campbell was doing the same thing, but not nearly as bad and not nearly as much. So, that leads us to the equal protection argument. There's only an equal protection violation if there's similarly situated people who are treated differently. We don't have similarly situated people here. The trial judge stated that Jared Campbell was doing the same thing as Jared Byrd, but he stated that Campbell was only doing the eyelids getting heavy thing. Where her eyelids would be getting heavy, but she was not actually falling asleep. And he stated, well, nowhere as bad or as much as Mr. Byrd. So, I would disagree that both of these jurors were doing the same thing and falling asleep. It appears from this record that this court has to rely on what the trial judge should have done. This court can, of course, give advice to what the trial court should have done. But in this case, we don't have an equal protection problem because the record clearly shows that Jared Byrd was falling asleep. Byrd, the victim, witnessed that in his testimony. And the trial court's statement that Jared Campbell was doing similar, but she was not falling asleep. And that leads me to the standard of review here. The U.S. Supreme Court case of Miller-Allen v. Packrell, I believe, states the correct standard of review. In that case, the court founded the trial court's decision on the ultimate question of whether the trial court had a discriminatory incentive. The review here represents a final effect of this court reporting great deference on the female and will not be overturned unless clearly the law erroneous. So we're at a disadvantage here if you thought for it. We can't see the jurors, the trial judge, and the other parties were able to actually observe the jurors. All we have is the cold record. And as did this court give deference to the trial judge's decision. He went out of his way to try to make a record for this court. I believe the record clearly supports his decision. And I don't believe that you can say that his decision was clearly erroneous. Just briefly on the second issue, the people also argued that that issue was forfeited because the defendant failed to show that there was second-front care. In second-front care, you have to show that the defendant was unfairly sentenced based on the trial court relying on improperly aggravating factors. Here, I support in my brief that the trial court did mention in passing the argument that one of the aggravating factors was threat of harm to the victim, even though that is something that's considered already a home invasion. Even though he mentioned it in passing, does it mean he placed significant weight on it? You can tell from the record that he placed the most significant weight on this criminal record. Well, if he gives it any weight, what does that say? If he gives it any weight at all, what does that say about it? If he gives it any weight, he just says it means that he did not place enough weight on it. Case law says that he has to put significant weight. If this court finds that the charge is placed less than significant weight, then you can defer the sentence. So I would argue that if he placed any weight on it, that's not weight or reversal. What's your standard between any weight and significant weight? How do you define the difference there? Any weight would be mentioning it as an aggravating factor. Significant weight would mean that he placed all the weight or most of the weight on that factor. If he repeated it, simplified it, if that's the only thing in the record, then he said the following things. Has that ever been clearly defined in case law? Not clearly defined, yes. I mean, it's just sort of like conclusionary statements. Based on the facts of a particular case? Yes, yes. Determination on the factual basis of each case. And in this case, I contend that the drug was not significant weight. There's never been an analysis on any of the cases or otherwise? No. These are the facts, these are the statements. This goes to significant weight, this goes to... No, that would be very difficult to do that, such as kind of a factual determination. And in this case, the factual determination, I would argue, that places less than significant weight. Because the drug that placed most of the weight has a criminal record. And significant hasn't been defined as most? No. No. Yes. Yes. It's a factual basis. It's hard to compare what's based on what case. And I agree with you. But based on this record, I submit that the drug judge did not place any weight that would be so significant that it would be a second crime here. Because the drug judge stated mostly that the defendant's criminal record was the reason he was imposing the sentence. The drug works in one place. The defendant had seven prior felonies. The drug judge stated, quote, seven prior felonies is a lot to overlook. End quote. And then he went over the seven felonies. One aggravated criminal sexual assault. That's X felony. He had one aggravated domestic debtor conviction. That's two felonies. One plus two felonies. He had five felonies for failure to report. Based on this record, I believe that you can find that the drug judge did not put any weight. Yeah. It's certainly not significant. But it would be inclusive, I would take that. How's those two minutes? If you can edit them out, Mr. McClure. But please, I ask that you affirm the defendant's conviction and sentence. Thank you, Mr. Leonard. Mr. Wigman from the Bible. I first want to address something, if I understood correctly, what Mr. Leonard said, which was that he had not received a reply. The copy that I have does not have a file stamp on it. I thought I would have to make certain that that copy was distributed to counsel in court. In fact, a reply was filed. And in that, we addressed the forfeiture arguments raised by the state. There were, in fact, at trial, contemporaneous objections to the actions of the court. In an argument there was a lone African-American juror. As well, there was a motion for new trial that couched the argument in terms of the denial of this trial. But it's sufficient, and it's the goal of the forfeiture rule, that the trial attorney raise the issue in the trial court that there be a sufficient discussion. This is not an argument that should catch anybody by surprise. It was well litigated within the court. It was raised in a motion for new trial. And, therefore, there was no forfeiture. To the extent that there was forfeiture to be addressed as well, this is literally something that was erased as plain error. And we did so in a reply written for this file in the court. Let's – can we talk about issue two for a moment? And would you agree that not all serious harm, for example, is created equal? There's serious harm, and there's serious harm. Would you agree with that? No. I mean, and then so if a judge is sentencing somebody for aggravated battery, he says, you know, you sawed both his legs off. And then the defense on appeal, they say, well, gee, serious harm is inherent in the offense, and he considered an aggravating factor. Well, we know that's wrong. He can say that because he could break his arm, that's serious harm, or he could cut his legs off. That's real serious harm. And there's probably more serious harm. So with respect to threatening serious harm, there is threatening serious harm. And if I'm somebody standing across the room and says, if you don't do what I tell you to do, I'm going to come over here and hit you upside your head with this brick that I got. Or there's holding a knife up to somebody's jugular or carotid arteries. Would you agree those are different levels of threatening serious harm? Well, and I don't mean to quibble with the court, but I believe that the phraseology of the aggravating factor is use of force or threat of force. Threat of force. And no inclusion of the serious harm. You're right that when there's a difference of degree. There's a different degree. You're correct. But there's different degrees of threats of force. If I hit you with this baseball Louisville slugger, or with the threat of force, you've got a knife right up against your carotid artery. Would you agree those are two variations? Those aren't equally the same threats of force? Yes. So the fact that the judge mentions the threat of force, how is that error? It's error because it's inherent in the offense. Well, holding a knife up against somebody's carotid artery is not inherent. You don't have to do that to be guilty of the threat of force. There's a number of ways you can do it. Not all of them include holding a knife up to somebody's throat. Well, I guess to start, the severity of the offense was never addressed by the court. What the court said was that there was the use of force for threat of the use of force. Well, in this record, the court said of the three factors it was considering an aggravation was this one factor. This was the first factor he mentioned, and then he mentioned two other factors. But he mentioned three factors in aggravation, and the threat of force was one of the factors in aggravation that he was considering. Correct. So I see what you're saying, that to that extent he's discussing the extent of the force, except that the evidence did suggest that there was an extreme use of force. There was a question of the fact there was no verdict reached by the jury as to that specific obligation of the threat of force or the force used against the witness whose testimony the juror purportedly substituted. There was no finding made by the jury as to that. And so what we were dealing with was the conviction on home invasion. And in the home invasion, the case is found by the threat of force or use of force, that being one of the elements. That says one thing. Considering the element is improper according to case law, and that's the objection that we have here. We typically figure that the judge knows the law and follows the law, except when the judge indicates otherwise. And here the judge indicated otherwise, indicated that this is one of the factors that he was going to be considering. And the other two factors had minimal impact or, as it appears in this case, deterrence. And there are many who question the utility of sentences as deterrence, but as well, it's mentioned in practically every case. Let me phrase my question a different way. If I'm a sentencing judge, a trial court judge, and is there anything wrong if we're just – in these two cases, there's a threat of force. And the one says, if you don't do what I say, I'm going to break your arm. Under the law, that's serious harm, threat of force. And then the other guy holds a knife up and has it right at their carotid artery and says, don't do what I say, I'm going to slice your throat open. Any different – any problem with the judge sentencing defendant number two to more time than defendant number one because the difference in the threat of force? It would not be improper for the judge in that circumstance to more heavily weight the more serious threat or harm. The difficulty is that the judge isn't supposed to, in this circumstance, use that as an aggravating factor or as an element of the offense. And what the cases tend to say is that where there's a question as to the weight that the judge put upon it and whether that weight is justified. You just agreed that it was okay to sentence defendant number two to more time, and why would you sentence him more time? Because that threat of force was an aggravating factor. If that's what the judge did, the difficulty is we don't know the weight that the judge put upon it or whether the court used that factor correctly or whether it was simply the fact that there was force or threat of force used. But of necessity, there was force or threat of force used because that was one of the elements, and that was found by the jury. We don't know whether the judge simply included that or considered the more serious harm. And where we can't tell what sort of weight the court can buy, remand is typically required. I do want to, if I can, very briefly address a question raised by Justice Carter regarding the seating assignments. And at page 219 of the record, there is a comment by the court as to the physical placement of the juror. Other than that, if there are no further questions, I thank you for your time and ask that you reverse the question. You know, the judge talks about that he refers to where they were seated. Yes. Okay. Well, thank you both for your arguments here this morning. This matter will be taken under advisement. A written disposition will be issued.